RECEIVED

OCT 06 2020

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Eric David Sorenson,
Melanie Ann (Sorenson) Forner

Plaintiff(s),

vs.

Case No. 20-cv-2121 MJD/DTS
_____
(To be assigned by Clerk of District Court)

Joanne Marie Sorenson

DEMAND FOR JURY TRIAL

YES ☑        NO ☐

Defendant(s).

(Enter the full name(s) of ALL defendants in
this lawsuit.  Please attach additional sheets
if necessary).

## **COMPLAINT**

PARTIES

1.  List your name, address and telephone number.  Do the same for any additional plaintiffs.

    a.  Plaintiff

       | | |
       |---|---|
       | Name | Eric David Sorenson |
       | Street Address | 16326 Dysprosium Street Northwest |
       | County, City | Anoka County, Ramsey |
       | State & Zip Code | Minnesota, 55303 |
       | Telephone Number | 612-385-3668 |

SCANNED
OCT 06 2020
U.S. DISTRICT COURT MPLS

2. List all defendants.  You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.

    a.  Defendant No. 1

| | |
|---|---|
| Name | Joanne Marie Sorenson |
| Street Address | 10886 Sparrow Lane |
| County, City | Shasta County, Palo Cedro |
| State & Zip Code | California, 96073 |

    b.  Defendant No. 2

Name

Street Address

County, City

State & Zip Code

    c.  Defendant No. 3

Name

Street Address

County, City

State & Zip Code

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER.**
**Check here if additional sheets of paper are attached:** ☑
**Please label the attached sheets of paper to correspond to the appropriate numbered paragraph above (e.g. Additional Defendants 2.d., 2.e., etc.)**

2

JURISDICTION

Federal courts are courts of limited jurisdiction. Generally, two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount of damages is more than $75,000 is a diversity of citizenship case.

3. What is the basis for federal court jurisdiction? *(check all that apply)*

   ☐ Federal Question          ☑ Diversity of Citizenship

4. If the basis for jurisdiction is Federal Question, which Federal Constitutional, statutory or treaty right is at issue? List all that apply.

   N/A

5. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party? Each Plaintiff must be diverse from each Defendant for diversity jurisdiction.

   Plaintiff Name:   Eric Sorenson          State of Citizenship: Minnesota

   Defendant No. 1: Joanne Sorenson          State of Citizenship: California

   Defendant No. 2:                          State of Citizenship:

   **Attach additional sheets of paper as necessary and label this information as paragraph 5.**
   **Check here if additional sheets of paper are attached.** ☑

6. What is the basis for venue in the District of Minnesota? *(check all that apply)*

   ☐ Defendant(s) reside in Minnesota  ☑ Facts alleged below primarily occurred in Minnesota
   ☐ Other: explain

   Various including Civil Theft, Breach of Contract, Tortious Interference with Expectancy, Breach of Trust, Breach of Fiduciary Duty, Detrimental Reliance, Financial Exploitation Vulnerable Adult, Promissory Estoppel

STATEMENT OF THE CLAIM

Describe in the space provided below the basic facts of your claim. The description of facts should include a specific explanation of how, where, and when each of the defendants named in the caption violated the law, and how you were harmed. Each paragraph must be numbered

3

separately, beginning with number 7.  Please write each single set of circumstances in a separately numbered paragraph.

7.

7. Plaintiff. Eric David Sorenson is a resident of Minnesota, and resides at 16326 Dysprosium St NW, Ramsey, MN,

55303. Eric Sorenson is the firstborn son of David August Sorenson (Deceased), and is named as Trustee and

Alternative Personal Representative in the Will of the Deceased.

8. Plaintiff. Melanie Ann (Sorenson) Forner is a resident of Minnesota, and resides at 385 Columbine Ln, Shakopee,

MN, 55379. Melanie is the daughter of David Sorenson and brother of Plaintiff Eric Sorenson.

9. Deceased. David August Sorenson was a Vulnerable Adult under Mn Stat. 609.232, subd. 11.4.i.ii. David Sorenson

started to experience Diminished Capacity and Dementia during 2010 at approximately seventy-five years of age.

The dementia had escalated to a finding of late-stage Alzheimers by the time of his death in late 2015. David

Sorenson was also experiencing an assortment of other illnesses between 2010 and 2015, such as cancers, small

strokes and other physical and cognitive issues.

**Attach additional sheets of paper as necessary.**
**Check here if additional sheets of paper are attached:** ☑
**Please label the attached sheets of paper to as Additional Facts and continue to number the paragraphs consecutively.**


REQUEST FOR RELIEF

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking.

We would like the court to allow us to assemble a jury, and then let that jury decide the outcome of this case.

We are asking for our share of an inheritance that was meant to be immediately disbursed after the passing of our father, but has been kept by our "step mother". The value is in the form of two Certificates of Deposit, with our share being $145,000, plus interest.

We are asking for our share of a house that was sold by the Defendant, who then purchased part of a house for her son in California with the proceeds and subsequently removed the Plaintiffs from her joint/mutual will, which was backed by promises, verbal agreements and contractual agreements between the Defendant and the Plaintiff's father. The value of the Plaintiffs share of the house is $143,750.

The total amount of damages sought by the Plaintiffs is no less than $288.750 plus interest and other possible compensation as allowed by the court.

4

Signed this 6th          day of October,   2020

Signature of Plaintiff

Mailing Address          16326 Dysprosium Street NW
                         Ramsey, MN 55303


Telephone Number     (612)385-2668


Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide his/her mailing address and telephone number.  Attach additional sheets of paper as necessary.

5

Sorenson V Sorenson                Additional Information


1a

Plaintiff One:    Eric David Sorenson
                  16326 Dysprosium St Nw
                  Anoka County, Ramsey, MN 55303

                  Phone (612) 385-2668

                  Email:  EMPSorenson@gmail.com  (missing on page 1)

                  Signature on Page 5


1b

Plaintiff Two     Melanie Ann (Sorenson) Forner
                  385 Columbine Lane
                  Scott County, Shakopee, Mn 55379

                  Phone (952) 913-7678

                  Email:  Mrswildfan@gmail.com



Signature of Plaintiff Two _Melanie Forner_            Date _10 · 6 · 2 0_

Sorenson v Sorenson                    Additional Facts

10. Defendant. Joanne Marie Sorenson  was a resident of Savage, Minnesota when
    and where a large majority of  the claims in this complaint occurred. She currently
    resides at 10886 Sparrow Ln, Palo Cedro, CA, 96073, and has lived there since
    mid-2016. The Defendant was a Caregiver to David Sorenson  under Mn Stat.
    609.232, subd. 2.. The Defendant is the second wife of David Sorenson, and was in
    a confidential and fiduciary relationship with David Sorenson until his death on
    November 14, 2015, at the age of eighty years. The Defendant was also the
    Personal Representative and executor of David Sorenson's will. The Defendant has
    one child, Todd Twining, who lives at the same address as the Defendant in Palo
    Cedro, California.  The Defendant is the stepmother to the Plaintiffs. The Defendant
    is approximately 10 years younger than David Sorenson.

11. The Plaintiffs claim that the Defendant acted in a willingly deceitful manner, and with
    complete disregard to the initial and final contractual and verbal agreements and
    promises that she had with David Sorenson, and ultimately with the Plaintiffs. The
    Plaintiffs are not making any challenges to the content of the Last Will and
    Testament of David Sorenson at this time.

Sorenson v Sorenson                Additional Facts

12. The Plaintiffs claim that The United States District Court, Minnesota, should be the venue for this claim. The Plaintiffs and the Defendant, as well as an overwhelming majority of the claims, records, evidence, business and healthcare entities involved are in, or tied to Minnesota. The Defendant moved to California in early 2016, just as the initial misdeeds of the Defendant were being discovered. 28 USC 1391 (b)(2)

13. The Plaintiffs claim that the Statute of Limitations (Mn Stat. 541.05) allows this complaint to be filed at this time. The Plaintiffs discovered the initial misdeeds of the Defendant beginning in March of 2016, and continued to uncover other misdeeds through mid-October of 2018, all of which is less than 6 years from when the Plaintiffs initially became aware of the Plaintiffs' transgressions.

14. **Trial by Jury.** The Plaintiffs request a jury trial. Amendment 7, US Constitution.

15. All audio recordings of phone conversations mentioned in this document between the Plaintiff Eric Sorenson and the Defendant were recorded in Minnesota before April 12th, 2016, when both the Plaintiffs and the Defendant were legal residents of

8

Sorenson v Sorenson                          Additional Facts

the state of Minnesota. The conversations were legally recorded as per Minn. Stat. 626A.02 , subd. 2 (D).

16. **The Plaintiffs allege Tortious Interference with Expectancy of Inheritance (or) Tortious Interference with Prospective Economic Advantage. (CD Accounts)**

Plaintiffs allege that the Defendant has knowingly and maliciously tried to hide and deprive them of a non-probate inheritance valued in excess of $145,000, which is approximately two-thirds of no less than $220,000. The Plaintiffs are seeking damages of no less than $145,000 plus interest at this time. The inheritance is from two Certificate of  Deposit accounts in which David Sorenson's three natural children were named as the only beneficiaries. The Plaintiffs claim that it was never David Sorenson's intention or wish that these financial instruments were to go to the Defendant for her personal use, or for use by her natural heirs at all. Both Certificate of Deposit accounts were funded and controlled solely by David Sorenson before the onset of Diminished Capacity, which turned into Dementia and Alzheimers, and for the express benefit and use of his natural children after his death. These accounts were built from funds and financial benefits that preceded the marriage of David Sorenson and the Defendant in 1996. The monies that funded the Certificates of Deposit accounts were from a Sorenson family inheritance from the early 1990's,

9

Sorenson v Sorenson                    Additional Facts

and a Minnesota Nurses Association (MNA) death benefit that David Sorenson started to receive after the passing of Karen Lucille Sorenson, his first wife and the mother of his children. The monthly MNA death benefit started in 1995 and continued until his death in 2015. Certificate of Deposit Accounts, "CD's", are not probatable assets, and in this case, were designed to be distributed to the Payable On Death, or "POD" beneficiaries without the need for probate.

17. It should be noted that the name "Todd Twining" has never appeared on any of the Certificates of Deposit as a beneficiary, as the accounts were meant to be a gift of inheritance to David Sorenson's natural children, and are of a very personal nature regarding his family prior to 1996 and his marriage to the Defendant.

18. **Civil Theft and Possible Criminal Theft on Certificate of Deposit Number One**

The First Certificate of Deposit , "CD1", was brought to the attention of the Plaintiff Eric Sorenson in December of 2015, by Mary Twining, wife of Todd Twining, and daughter-in-law of the Defendant. The Plaintiffs were told that David Sorenson wanted his children to have a $108,000 Certificate of Deposit that he had been saving. Many phone, text, and in-person discussions with the Defendant followed

10

Sorenson v Sorenson                    Additional Facts

this conversation with Mary Twining. The Plaintiffs had determined during this time
that the Defendant was being deceitful to them on various aspects of the situation.
Plaintiff Eric Sorenson then proceeded to start recording phone calls, texts and
conversations with the Defendant. The Defendant claimed that she wanted to, and
was going to give the Plaintiffs the Certificate of Deposit, but failed to do so. The
plaintiffs demand two-thirds of $108,000, or $72,000, plus interest at this time.

## 19. The Plaintiffs allege Financial Exploitation of a Vulnerable Adult, Mn Stat. 609.2335 on CD1

The Defendant did   ( under 609.2335, subd. 1.ii ) take through undue influence or
for convenience, temporarily or permanently, the Certificate of Deposit accounts of
David Sorenson, which he owned and kept for the express benefit of his own
children upon his death. The Defendant did in fact (under 609.2335, subd. 1.iii)
temporarily or permanently deprive David Sorenson of personal property for the
benefit of herself when she somehow had her name added to his Certificate of
Deposit accounts and then kept them after David Sorensons' passing. The plaintiffs
demand two-thirds of $108,000, or $72,000, plus interest at this time.

Sorenson v Sorenson                    Additional Facts

**20. The Plaintiffs allege Civil Theft and possible Criminal Theft. Mn Stat. 609.52. Subd. 2 (2) (4) (5 i, ii) on CD1**

The Defendants name was added to CD1 in 2011, for tax purposes, convenience or with undue influence after David Sorenson had started to show signs of Diminished Capacity. It is understandable that the Defendant might be added to the accounts with the (5) initial intent to exercise temporary control of the account, but it is clear, through various phone recordings and conversations with the Defendant, that with her name now on the account, that she (i) manifested a cold indifference to the rights of David Sorenson, and to the promises or agreements she had made with David Sorenson. It was David Sorenson's intention and expectation that the accounts would be given to the Plaintiffs as beneficiaries upon his death. On or about May 7, 2016, during a recorded phone call, the Defendant said that (iii) the Plaintiffs could "take a hit" of $25,000 to compensate for the "gift tax". There is no gift tax on an account of this size and in this situation. The plaintiffs demand two-thirds of $108,000, or $72,000, plus interest at this time.

**21. The Plaintiffs allege Breach of Oral Contract on CD1**

In February of 2016, the Defendant originally told the Plaintiff, Eric Sorenson, that

Sorenson v Sorenson                    Additional Facts

she was going to give only him an inheritance. It was at that point that the Plaintiff Eric Sorenson, started to feel uneasy with talking to the Defendant, and started to record phone calls and transcribe conversations. The Defendant then claimed on March 7, 2016, that she would release CD1 to the Plaintiffs in some manner, and that she was going to contact her attorney to see about drafting release forms for the Plaintiffs to sign so that the Plaintiffs could not come back at her at a later time and "Sue me (her) frivolously". The Plaintiffs tended to believe the Defendant, and subsequently waited for the Defendant to disburse the inheritance. Shortly after this, the Defendant started to come up with excuses as to why she could or would not give or release the whole amount, or that she could only give a lesser amount because of a "Gift Tax". On March 11, 2016, The Plaintiffs received a text message from the Defendant, claiming that she would pay them $14,000 on April 12, 2016, which was the day she would be leaving on a plane to California. The Plaintiffs felt that the Defendant was lying to them, and just "stringing them along" until she could get out of Minnesota, so the Plaintiffs retained an attorney to write a Demand Letter to the Defendant. The reply from her lawyer stated that the Defendant was not going to give the Certificate of Deposit, CD1, to the Plaintiffs. On October 15, 2018, the Plaintiffs learned that the Defendant had never given them any proceeds from CD1. The plaintiffs demand two-thirds of $108,000, or $72,000, plus interest at this time for CD1.

13

Sorenson v Sorenson                    Additional Facts

22. In mid-2016, Plaintiff Eric Sorenson, in an effort to learn more about the details of CD1, located what he thought was the Certificate of Deposit in question at the Anchor Bank in Eden Prairie, Minnesota. The Plaintiff was told by the manager at Anchor Bank that the account was current and had funds valued at "over $108,000", and that the Payable Upon Death beneficiaries were listed as "Eric Sorenson, Melanie Forner, and Paul Sorenson.". When asked. the bank manager told the Plaintiff that Todd Twining was not listed as a beneficiary on the CD account. The Plaintiff asked the manager why the Certificate of Deposit could not be payed to the beneficiaries, and was told,"Because Joanne's (the Defendant) name is still on it". The Anchor Bank has since had it's named changed to Old National Bank.

### 23. Fraudulent Conduct on Second CD, "CD2"

In mid-2016, very soon after the Plaintiffs thought that they had located CD1. The Defendant's attorney forwarded a letter from the South Metro Federal Credit Union in Prior Lake, Minnesota, explaining that the $108,000 Certificate of Deposit, which listed Eric Sorenson, Melanie Forner and Paul Sorenson as beneficiaries, had been opened by David Sorenson as the sole account holder in 2009. The Defendant's name was added to the CD1 via convenience or undue influence in early 2011, after David Sorenson had been showing signs of Diminished Capacity, Dementia, small

14

Sorenson v Sorenson                Additional Facts

strokes and other serious health issues. It was determined that this Certificate of
Deposit account at South Metro Federal Credit Union was actually "CD1", and that
the Certificate of Deposit account located at Anchor Bank/Old National Bank was an
entirely different Certificate of Deposit account that the Plaintiffs are calling "CD2".
The Plaintiffs believe that the existence of CD1 was divulged and offered to the
Plaintiffs because of it's lower monetary value in a fraudulent manner to make them
think that it was all that existed and to have them satisfied to be receiving
"something", while keeping the larger Certificate of Deposit account ,CD2,  for her
own use or the use of her heir. The Defendant has refused to answer questions
about the existence of CD2, but her daughter-in-law has alluded to it's existence.
The plaintiffs demand at least two-thirds of "over $110,000". or over $73,000,  plus
interest at this time for CD2.


**24. Civil Theft and Possible Criminal Theft on CD2.**

In early March of 2016, the Defendant told the Plaintiff, Eric Sorenson, that in early-
to-mid 2015, that she had taken her Power of Attorney papers to the banks where
David Sorenson had accounts, in an effort attach her name to David Sorenson's
accounts. The Defendant said that her actions were in hopes of keeping the
accounts away from Veterans Hospice Care if David Sorenson were to use that

15

Sorenson v Sorenson                    Additional Facts

program. The Plaintiffs believe that CD2 has been taken and possibly converted with the use of Power of Attorney, or by the same situation as CD1 was taken, where the Defendants name appeared attached to it at a later time in David Sorenson's life, through undue influence or convenience when he was starting to display Diminished Capacity, Dementia or Alzheimers. The plaintiffs demand at least two-thirds of "over $110,000". or over $73,000,  plus interest at this time for CD2.

25. The Plaintiffs currently do not have official, acute information concerning CD2, which was located at the Anchor Bank, now Old National Bank, in Eden Prairie, Minnesota. The Plaintiffs are highly inclined to believe that there is a greater chance that the Defendant's name was attached to it in an even more questionable way than CD1. The Plaintiffs request full access to David Sorenson's account history at this bank, to tax files at Menden Accounting in Shakopee, Minnesota, or access to Internal Revenue Service documents before they can ascertain additional allegations concerning CD2.

26. **The Plaintiffs allege Tortious Interference with Expectancy of Inheritance (or) Tortious Interference with Prospective Economic Advantage.  CD1 & CD2**

16

Sorenson v Sorenson                    Additional Facts

The Plaintiffs have had various conversations with their father about an inheritance that goes to them at the time of his passing. The latest discussion was between the Plaintiff, Eric Sorenson, and his father in the Fall of 2012, where David Sorenson told the Plaintiff that (the Plaintiffs) could each expect an inheritance "about $50,000" inheritance if he died before the Defendant. The Defendant probably knew about the beneficiares on CD1, as she had her name added to it in 2011 and was probably taking care of the taxes on it at that point, or was about to due to David Sorenson's Dementia. The Defendant would sometimes complain or make remarks about David Sorenson's CD's, or annuities, or Required Minimum Distributions during his Diminished Capacity and Dementia, which usually made him angry. The Defendant was taking care of David Sorenson's finances by 2012, as evidence by a recorded conversation in 2016 where she said that David Sorenson "could not balance a checkbook in 2012". When David Sorenson passed away in 2015, she kept the CD(s), and made no attempt to tell the Plaintiffs about the CD(s), which deprived the Plaintiffs of their expected inheritance as described by their father. The plaintiffs demand two-thirds of CD1, and two-thirds of CD2, for an initial total of over $145,000, plus interest at this time.

Sorenson v Sorenson                      Additional Facts

**27. The Plaintiffs allege Breach of Trust.**

The Defendant was the executor of David Sorenson's will, as well as Trustee to David Sorenson's bank accounts in which the Plaintiffs were listed as beneficiaries at the time of his death. The Defendant, as displayed through a recorded phone conversation with the Plaintiff, has attempted to minimize David Sorenson's wishes, both contractual and verbal, as "informal". The fact is that David Sorenson cared so much for his children that he took the time and care to make sure that his children were beneficiaries to important bank accounts and trusts that he was building and that existed before his marriage to the Defendant. The plaintiffs demand two-thirds of CD1, and two-thirds of CD2, for an initial total of over $145,000, plus interest at this time.

**28. The Plaintiffs allege Breach of Fiduciary Duty.**

The Defendant was a fiduciary to David Sorenson during his Diminshed Capacity, Dementia and Alzheimers. It was David Sorenson's contractual expectation with the banks, and his known intentions and verbal agreements with the Defendant, that his personal investments were to go to his three natural children, as evidenced by them being named as beneficiaries on two Certificate of Deposit accounts. The

Sorenson v Sorenson                    Additional Facts

Defendant's name appeared on the CDs in 2011 and possibly later, through questionable means such as undue influence or a simple matter of convenience and tax purposes after David Sorenson was experiencing Diminished Capacity, failing health and cognitive issues. The Defendant has refused to release CD1 or acknowledge CD2. The Plaintiffs request that both CD's, or the value of the CD's be awarded to the Plaintiffs. The Plaintiffs demand two-thirds of CD1, and two-thirds of CD2, for an initial total of over $145,000, plus interest at this time.

29. In early March of 2016, after learning that the Defendant was planning to sell the house in Savage, MN, and move to California, the Plaintiffs hired an attorney who officially requested that the $108,000 Certificate of Deposit and an additional $75,000 be paid to the Plaintiff and his siblings to "avoid probate" according to the attorney. The $75,000, in actuality, reflected the stake that the Plaintiff's mother would have had in the house, which was approximately one-quarter of the price being asked for the house. The Plaintiffs were not aware of the second Certificate of Deposit, CD2, at this time.

30. The Plaintiffs were about to sue the Defendant in late 2016 for CD1 and CD2, but

Sorenson v Sorenson                    Additional Facts

decided against it when the Defendant started to send money to the Plaintiffs. The
Defendant gave each sibling $14,000 in late 2016, and another $14,000 to each
sibling in January of 2017.  The Defendant never communicated with the Plaintiffs
about the reason  for releasing what the Plaintiffs thought to be the inheritance from
CD1. The Plaintiffs did not sue the Defendant at this point because they were
getting "something", and the Plaintiffs knew that they would be in the Defendant's
will when she passed away.

31. The Plaintiffs were under the impression, from previous discussions with the
Defendant, that there would be a final payment of approximately $8,000 to each
sibling during the first part of 2018. The Plaintiff, Eric Sorenson, sent a letter to the
Defendant in mid-2018, asking when to expect the final $8,000 per person, to which
was received a letter that stated that the siblings would receive the money if they
signed-away all of their rights to the final estate of the Defendant.

32. In late 2018, Plaintiff Eric Sorenson personally sued the Defendant in Shasta
County, CA, Small Claims Court  for his share of the remainder of what was thought
to be owed to him from CD1. The Plaintiff, Eric Sorenson was not allowed to use

20

Sorenson v Sorenson                    Additional Facts

audio evidence that would show verbal agreements and other disingenuous statements made by the Defendant, and because of this, the damages were not awarded to him based on lack of evidence. The Plaintiff Eric Sorenson had also told the judge that the Plaintiffs would eventually be suing the Defendant for CD2, and the judge had mentioned to add the "CD1 issue" into that process, which further backed his decision to find the case in favor of the Defendant at that time. During the court hearing, at approximately 3:00 pm on October 15th, 2018, in front of Commissioner John Berg, the Defendant claimed emphatically that, "I gave them that money from the goodness of my heart, I already took them out of my will and their (the Plaintiffs) names are still on that CD!".

### 33. The House

In late 2015-early 2016, the Defendant chose to sell the house in Savage, Minnesota in which she had resided with David Sorenson, and move to Palo Cedro, California, where she put more than $60,000 into a home that she would buy and co-own with her son, Todd, and his wife Mary. The Plaintiffs also claim that the Defendant gave multiple Inter Vivos gifts to her son and his wife from the sale of the house, which included tax debt relief on a business owned by Todd Twining, house remodeling funds and various other items that started to show-up on their Facebook

Sorenson v Sorenson                    Additional Facts


profiles not long after David Sorenson had died.


34. The Defendant sold the house that she had owned with David Sorenson in 2016, and then removed David Sorenson's natural heirs from her Will at some point before October 15th, 2018. The Plaintiffs claim that this was a maliciously planned effort by the Defendant to deprive the Plaintiffs of any inheritances previously promised and agreed to with David Sorenson through the verbal and contractual obligations of the Antenuptials and Matching/Joint Wills.


35. The Defendant and David Sorenson were married in 1996 with Antenuptial agreements / contracts. David Sorenson and the Defendant soon started to have arguments about David's overuse of his liquid assets and the Defendant's underuse of her own finances in the marriage. In these  Antenuptials, Todd Twining would have received approximately one-half of of the final estate, and the Plaintiffs would have received the other one-half of the estate after the Defendant and David Sorenson had both passed.

Sorenson v Sorenson                    Additional Facts

## 36. The Plaintiffs allege Breach of Contract, Detrimental Reliance and Promissory Estoppel

The Defendant and David Sorenson, to avoid further arguments about how David Sorenson was contributing more financially to the marriage than the Defendant, agreed to have joint, matching wills drawn-up in 2001. In the wills agreed to by David Sorenson and the Defendant, Todd Twining would now be entitled to 25% of the final estate, with Eric Sorenson, Melanie (Sorenson) Forner and Paul Sorenson being each entitled to 25% of the final estate as well. It is well-admitted by David Sorenson in conversations with, and in a letter to Plaintiff Eric Sorenson, that the wills were to there to remove financial arguments by dividing the final estate into a more equal division that reflected the over-use of assets owned by David Sorenson and the under-use of assets owned by the Defendant. The Defendant admits during a recorded phone call that she, "...had all of my (her) money tied-up" in retirement accounts and investments and that they had to use more of David Sorenson's money, and that the Plaintiffs are (were) in her will. The wills were agreed to, drafted and signed as a contract and promise to have the lasting intent that a greater share, three-quarters of the Final Estate, should go to David Sorenson's natural children after both David Sorenson and the Defendant had passed away. The Defendant has breached this verbal and contractual agreement by removing the Plaintiffs from her will in an attempt to take and convert for herself and her child, an unjust enrichment

Sorenson v Sorenson                    Additional Facts

from an inheritance that should have eventually gone to the Plaintiffs. The two Plaintiffs have lost at least a two-quarters share from the proceeds of the sale of the house, and an unknown amount of money from the final estate of the Defendant when she passes. The Plaintiffs demand a two-quarters share from the sale of the house at this time, which is $143,750,  or two-quarters of $287.500, the selling price of the home.

**37. The Plaintiffs allege Civil Theft.**

As part of the Prenuptial Contracts that were drawn-up in 1996, the house would have passed to the survivor as a Life Estate. When that survivor were to pass-away or leave the property to go into assisted living, the property would have been sold and the proceeds divided between the heirs according to the prenuptial contracts, or the promissory spirit of the contractual wills between the Defendant and David Sorenson, and ultimately the heirs in the final estate. The Plaintiffs claim that the Defendant has knowingly, willfully and with great disregard to the wishes of David Sorenson, has stolen and converted the proceeds from the house in Savage, MN into property now owned entirely by the Defendant, her son and his wife, and ultimately to just her son and his wife. David Sorenson would never have agreed to the outcome that the Defendant has created. The Defendant, through her willful

Sorenson v Sorenson                    Additional Facts

actions and with disregard to the wishes and expectations, both formally and verbally contractual with David Sorenson, has essentially converted at least three-quarters of the proceeds from the house that she sold, into property that will be left to her single heir. The Plaintiffs are demanding that the Defendant pay them $143,750 at this time, which is two-quarters of $287.500, the selling price of the home. The remaining two-quarters would belong to Paul Sorenson and Todd Twining equally.

38. **The Plaintiffs allege Tortious Interference with Expectancy of Inheritance (or) Tortious Interference with Prospective Economic Advantage. (House)**

The Plaintiffs claim that this is not a probate issue for the simple fact that the Defendant is still alive and has broken verbal and contractual agreement(s) between herself and David Sorenson, and ultimately David's children, by removing David's children from her will in an effort to deprive the Plaintiffs of the inheritance that they are entitled to. The Defendant's will, if it had not been altered to exclude David Sorenson's three heirs, would have entitled the Plaintiffs to 75% of her final estate, which would have included 75% of her home and 75% of everything in her name at  the time of her eventual passing.  The Plaintiffs, due to their previous interactions with, and complete distrust of the Defendant, will reject any idea of

Sorenson v Sorenson                    Additional Facts

being reinstated into the will of the Defendant as part of an award or settlement. The two  Plaintiffs demand a two-quarters share from the sale of the house at this time, and an as-of-yet undetermined amount in lieu of being re-inserted into the Defendants' will.

### 39. Part Performance.

David Sorenson and the Defendant had previously agreed to make, and did make prenuptial contracts to secure and protect equally fair inheritances for their own children. When the prenuptial contracts proved to be inadequate to secure a fair inheritance for their children, David Sorenson and the Defendant verbally and contractually agreed, through the use of matching/joint wills, to readjust the inheritance that each child would receive. The matching/joint wills do not explicitly say that they can or cannot be voided or changed by one party alone, but the Part Performance demonstrated by both David Sorenson and the Defendant in the antenuptials and the in wills will show that these wills should carry the same weight and strength of the prenuptial contracts in that they cannot be cancelled or changed by one party on their own.

Sorenson v Sorenson                    Additional Facts

40. It should be noted that the Plaintiffs have not been given, nor have they found any evidence that shows that the Antenuptial contracts have actually been canceled or voided by David Sorenson at the time that his Will was made.

### 41. Promissory Estoppel and Detrimental Reliance

It is clear that David Sorenson and the Defendant had made agreements and promises to each other, and that these agreements and promises strictly and undeniably only existed because David Sorenson loved his children, and because the Defendant loved her child. Neither David Sorenson or the Defendant would have needed Antenuptials or Wills if it were not for them wanting to secure fair inheritances for their children. They acted on these promises by making prenuptial contracts and eventually matching wills. It was a nefarious act for the Defendant to add the Plaintiffs to her will to appease David Sorenson, and to then remove them from her will after David Sorenson had passed. To David Sorenson, the wills were an expression of intent for the future, and the Defendant has callously disregarded them in attempting to break her promises and agreements with David Sorenson and ultimately, the Plaintiffs.

Sorenson v Sorenson                    Additional Facts

**42. Anticipatory Breach of Contract.**

The Plaintiffs are no longer in the Defendant's will. The Defendant has attested to this fact in a court of law. The Defendant's previous malicious actions would suggest that she cannot be trusted to settle this claim with any type of promissory contract, or a revised Last Will and Testament to include the Plaintiffs. The Plaintiffs believe that the Defendant would try to find a way to take and convert most of her assets and give them to her son and/or daughter-in-law before she passes away. The Plaintiffs have lost nearly every avenue of inheritance that David Sorenson and the Defendant had agreed upon before his passing in 2015. The Plaintiffs have lost not only three-quarters of the proceeds from the sale of a house that the Defendant sold, but also three-quarters of the final estate of the Defendant as per the agreements she made with David Sorenson. The Plaintiffs are asking for a two-quarters share of the house, and an as-of-yet unknown amount of the Defendants net worth in lieu being put back into her will.

**43. The Plaintiffs seek Relief from the Defendant**

The damages being sought at this time are $143,750 for a two-quarters share of the house, a two-thirds share of CD1 at approximately $72,000 plus interest, a two-

28

Sorenson v Sorenson                    Additional Facts

thirds share of CD2 at approximately $73,000 plus interest, and an as-of-yet unknown amount of the Defendants net worth in lieu of being reintroduced into her existing Last Will and Testament. Plaintiff's also seek legal fees and expert witness fees associated with the case. The total amount of damages sought by the Plaintiffs at this time are no less than $288,750 plus interest, and possible other damages as allowed by the court.