# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ERIC DAVID SORENSON and
MELANIE ANN FORNER,

        Plaintiffs,


v.

JOANNE MARIE SORENSON,

        Defendant.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 20-2121 (MJD/DTS)

Adine S. Momoh and Kelly Maxwell, Stinson LLP, Counsel for Plaintiffs.

Ronald B. Sieloff, Sieloff & Associates, P.A., Counsel for Defendant.

## I.      INTRODUCTION

This matter is before the Court on Defendant Joanne Marie Sorenson's

Motion to Dismiss Complaint and Amended Complaint.  [Docket No. 32]  The

Court will decide the motion on the papers.

## II.     BACKGROUND

### A.    Factual Background

### 1.    The Parties

Decedent David August Sorenson died on November 14, 2015, at age 80. ([Docket No. 13] First Amended Complaint ("FAC") ¶ 4.)  Decedent had three adult children: Plaintiff Eric David Sorenson,  Plaintiff Melanie Ann Forner, and non-party Paul Sorenson.  (Id. ¶¶ 1-2; ([Docket No. 8] J. Sorenson Aff. § II.)

Plaintiffs Eric Sorenson and Melanie Forner are Minnesota residents.  (FAC ¶¶ 1-2.)  Paul Sorenson is a California resident.  (Joanne Sorenson Aff. § II.)

Defendant Joanne Marie Sorenson is a resident of California and Decedent's widow.  (FAC ¶ 4.)  Defendant married Decedent in 1996.  (Id. ¶ 29.) Defendant has one adult child, Todd Twining, who is a California resident.  (Id. ¶ 4.)

### 2.    Power of Attorney

On October 17, 2001, Decedent signed a notarized Statutory Short Form Power of Attorney naming Defendant as his attorney-in-fact and Eric Sorenson as his successor attorney-in-fact.  (FAC ¶ 16; [Docket No. 8] J. Sorenson Aff., Ex. O at 69–71.)  Under Part Three of the form, Decedent checked the box stating: "This power of attorney authorizes the attorney-in-fact to transfer my property to the attorney-in-fact." (Id. at 71.)

### 3.    Decedent's Capacity

Plaintiffs allege that Decedent began to experience dementia and

diminished capacity in 2010.  (FAC ¶ 3.)  They assert that this dementia escalated

to late-stage Alzheimer's by the time of his death in November 2015.  (Id.)

### 4.    Inheritance

Plaintiffs assert that, in the fall of 2012, Decedent told Eric Sorenson that, if

Decedent died before Defendant, each Plaintiff could expect an inheritance of

"about $50,000."  (FAC ¶ 20.)

No probate proceeding was ever commenced for Decedent's estate.

(Sorenson Aff., Ex. D, Register of Actions at 18.)

Sometime before October 15, 2018, Defendant removed Decedent's three

children (Plaintiffs and their brother, Paul Sorenson) from her will.  (FAC ¶ 28.)

Decedent died on November 14, 2015.  (FAC ¶ 4.)

### 5.    Certificates of Deposit

#### a)    First CD

In December 2015, Todd Twining's wife, Mary Twining, told Plaintiffs that

Decedent had wanted his children to have a $108,000 certificate of deposit ("First

CD" or "CD1").  (FAC ¶ 12.)  Eric Sorenson spoke to Defendant, and she stated

that she was going to give Plaintiffs the certificate of deposit, but she did not.

(Id.)

In mid-2016, Defendant's attorney forwarded Plaintiffs a letter from the South Metro Federal Credit Union in Prior Lake, Minnesota, stating that the $108,000 certificate of deposit had been opened by Decedent as the sole account holder in 2009.  (FAC ¶ 17.)  CD1 named Plaintiffs and Paul Sorenson as beneficiaries.  (Id.)  In the original Complaint, Plaintiffs alleged that Defendant was added as a joint accountholder to CD1 in 2011; however, that allegation was stricken from the FAC.  (Id.)

### b)   Second CD

In 2016, Eric Sorenson located a certificate of deposit at Anchor Bank in Eden Prairie, Minnesota ("CD2" or "Second CD").  (FAC ¶¶ 16-17.)  The bank told him that CD2's value was "over $108,000" and that the payable upon death beneficiaries were Plaintiffs and Paul Sorenson.  (Id. ¶ 16.)  The bank explained that CD2 could not be paid to them because Defendant's name was still on CD2. (Id.)

Defendant submits Exhibit B, showing that, in 2015, Decedent and Defendant had a joint checking account at Anchor Bank created by Decedent and

4

Defendant each separately and personally signing on the account.  (Reply Ex. B, June 12, 2015, Anchor Bank Account Agreement.)  No power of attorney was used.  Defendant also submits Exhibit A, a letter from Anchor Bank confirming that there was no certificate of deposit with Defendant's name and social security number in 2015 and 2016.  (Reply Ex. A.)

### c)   Closing of CD2

Plaintiffs allege that Eric Sorenson later went to Anchor Bank to obtain more information about CD2.  (FAC ¶ 16.)  The bank manager told him that Defendant had closed CD2 a couple of weeks after Eric Sorenson had previously visited the bank.  (Id.)

Plaintiffs allege that Defendant had Decedent's power of attorney and that she used that power of attorney to add her name to the certificates of deposit in early-to-mid-2015.  (FAC ¶ 18.)

### d)   Defendant's Payments to Plaintiffs

In March 2016, Plaintiffs hired an attorney who requested that the $108,000 CD1 plus $75,000 be paid to Decedent's three children (Plaintiffs and their brother, Paul Sorenson).  (FAC ¶ 23.)  Later in 2016, Decedent sent some amount of money to Plaintiffs.  (Id. ¶ 24.)  In the original Complaint, Plaintiffs alleged

that Defendant gave each sibling $28,000; this allegation was stricken from the

FAC.  (Id.)  In their Opposition Brief, Plaintiffs admit that Defendant paid Eric

Sorenson, Melanie Forner, and Paul Sorenson $28,000 each, for a total amount of

$84,000, for CD1.  (Opp. at 9.)  This left $24,000 from CD1 not paid to Plaintiffs

and Paul Sorenson.  In mid-2018, Eric Sorenson asked Defendant when Plaintiffs

and Paul Sorenson would receive the remaining $24,000.  (Id.; FAC ¶ 25.)

Defendant stated that she would pay the last $24,000 when Plaintiffs and Paul

Sorenson signed a release with respect to Defendant's "final estate."  (Opp. at 9;

FAC ¶ 25)  Plaintiffs assert that they refused to sign the release.  (Opp. at 9.)

### 6.  California Lawsuit

In 2018, Plaintiff Eric Sorenson sued Defendant in California Small Claims

Court for the remainder of what he thought he was owed from CD1.  (FAC ¶ 26.)

He sought the "[f]inal payment, plus interest, of (admitted) monies that were to

go to me after my fathers passing."  (J. Sorenson Aff., Ex. G, Small Claims Court

Claim at 24.)  On October 15, 2018, the California court found in favor of

Defendant, holding that Defendant did not owe Eric Sorenson any money on his

claim.  (FAC ¶ 26; J. Sorenson Aff., Ex. G, Notice of Entry of Judgment at 25.)

### B.  Procedural History

On October 6, 2020, Eric Sorenson and Melanie Forner filed a pro se Complaint against Defendant in this Court based on diversity jurisdiction. [Docket No. 1]  The Complaint alleged multiple claims related to the certificates of deposit and various other issues relating to Plaintiffs' inheritance and Decedent's will, which were eliminated from the later-filed First Amended Complaint ("FAC").  The Summons and Complaint were served on Defendant on October 20, 2020.  [Docket No. 3]

On November 10, Defendant filed a Motion to Dismiss for Lack of Jurisdiction.  [Docket No. 5]  Defendant requested that the Court dismiss the Complaint based on 1) lack of diversity jurisdiction; 2) failure to state a claim; and 3) failure to join Paul Sorenson as a necessary party.  Defendant asserted multiple bases for dismissal including that the state probate court has exclusive jurisdiction over will contests, the three-year statute of limitations for probate actions, and res judicata based on the California lawsuit.  One basis for this motion was that Paul Sorenson was an indispensable party but that, because he is a California resident, inclusion of Paul Sorenson as a Plaintiff would destroy diversity jurisdiction.

After the motion to dismiss was filed, Paul Sorenson executed a letter ([Docket No. 16] Pls. Ex. Ex. W at 64) and an "Assignment of a Claim for Damages" ([Docket No. 16] Pls. Ex. Ex. X at 65-67) in which, in exchange for $1.00, Paul Sorenson sells and transfers to Melanie Forner "any and all claims, demands, and causes of action of any kind whatsoever": 1) "against Joanne Marie Sorenson in her role as an Attorney in Fact for David August Sorenson;" 2) "against Joanne Marie Sorenson in her role as a spouse of a living David August Sorenson;" 3) "against Joanne Marie Sorenson in her role as an Executor for the Estate of David August Sorenson;" 4) "against Joanne Marie Sorenson as an individual;" 5) "against the Estate of David August Sorenson;" 6) "against any third party service providers to Joanne Marie Sorenson in any role, a living David August Sorenson, and the estate of David August Sorenson;" and 7) "against any individuals known to me or not, that may have assisted or conspired with Joanne Marie Sorenson to facilitate any of the underlying claims to which assignment is being tendered."  Paul Sorenson reserves any claims, demands, and causes of action that Paul Sorenson may have against Defendant with regard to her estate planning and any claims he may have against Defendant's "other potential heirs, the Assignee included."  (Assignment of a

Claim for Damages.)  The letter is dated November 24, 2020.  Paul Sorenson's

signature on the Assignment does not have a date, but Melanie Forner's

signature on the Assignment is dated November 29, 2020.  (Assignment of a

Claim for Damages.)  The Assignment states that it was made and was effective

on November 24, 2020.  (Id.)

On December 1, 2020, Plaintiffs filed a First Amended Complaint ("FAC"),

which moots Defendant's first motion to dismiss.  [Docket No. 13]

The FAC eliminates a significant portion of the factual allegations and

claims that were asserted in the original Complaint.  It solely seeks damages "for

any and all property being found to have the Plaintiffs['] name on the property

as beneficiaries and where the Defendant has attached her name to it as an Agent

after mid-2010.  These damages would be over $108,000."  (FAC at p. 22.)  They

allege claims for civil theft and fraud.  In Plaintiffs' opposition brief, they

characterize their claims as "alleging civil theft and civil fraud with respect to the

First CD, Second CD, as well as any other non-probate assets that David had

intended for his children."  (Opp. at 9.)

On December 15, Defendant filed the current motion to dismiss addressing

the FAC.  [Docket No. 32]  The current operative motion to dismiss is based on 1)

lack of subject matter jurisdiction; 2) failure to state a claim upon which relief

may be granted; 3) Plaintiffs are not the real parties in interest; 4) failure to serve

a timely response to the original motion to dismiss; 5) res judicata; and 6) default

by Melanie Forner for failure to sign the FAC or any pleadings in support.

On February 20, 2021, Melanie Forner filed a document signed by her on

February 8, 2021, entitled "Signature Statement for First Amended Complaint

and for Other Responses Filed on 12/01/20," requesting that her signature be

added to the FAC.  [Docket No. 50]  Subsequently, attorneys volunteered to

represent Plaintiffs through the Court's Pro Se Project, and Plaintiffs' counsel

filed the opposition brief to the motion to dismiss.

III.    DISCUSSION

    A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court rejects Defendant's claim that this matter must be dismissed

without prejudice for lack of subject matter jurisdiction.

    1.    Jurisdiction Standard

"Jurisdictional issues, whether they involve questions of law or of fact, are

for the court to decide."  Osborn v. United States, 918 F.2d 724, 729 (8th Cir.

1990).  "Moreover, because jurisdiction is a threshold question, judicial economy

10

demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion." Id.

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. In "a factual attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Id. In a factual challenge, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn, 918 F.2d at 730 (citation omitted).

### 2.   Diversity Jurisdiction

Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity

11

of citizenship among the litigants.  Complete diversity of citizenship
exists where no defendant holds citizenship in the same state where
any plaintiff holds citizenship.

OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citations
omitted).

"[D]iversity of citizenship is determined in these cases by the citizenship of

the parties named in the proceedings before the district court, plus any

indispensable parties who must be joined pursuant to Rule 19." Northport

Health Servs. of Ark., LLC v. Rutherford, 605 F.3d 483, 491 (8th Cir. 2010)

(footnote omitted).

### 3.    Diversity of the Parties

Defendant asserts that diversity jurisdiction does not exist because the

parties are not diverse.  Eric Sorenson and Melanie Forner are Minnesota

residents, and Defendant is a California resident.  Paul Sorenson is a California

resident and, according to Defendant, an indispensable party.  "Joinder or

omission of an indispensable but nondiverse party requires dismissal." Poultry

Borderless Co., LLC v. Froemming, No. 20-CV-1054 (WMW/LIB), 2021 WL

354087, at *4 (D. Minn. Feb. 2, 2021).

Determining whether a non-party is "indispensable" pursuant to
Rule 19 is a two-step process.  First, it must be shown that the non-

12

party's joinder is required (or "necessary") under Rule 19(a)(1). A person must be joined if: (1) the court could not afford complete relief amongst the parties in that person's absence; or (2) the person to be joined claims an interest such that his/her absence would impede or impair his/her ability to protect said interest; or (3) the person's interest would leave a party facing a substantial risk of inconsistent obligations. If the non-party does not meet the Rule 19(a)(1) criteria, the inquiry is at an end and the non-party is not indispensable. Only if the non-party is necessary pursuant to Rule 19(a)(1) does the court analyze the matter under Rule 19(b). The basic consideration when determining whether a non-party is indispensable is if the non-party's absence would render a judgment infirm, defective, or unfairly prejudicial in some fashion.

Equal Emp. Opportunity Comm'n v. Cummins Power Generation Inc., 313 F.R.D. 93, 98 (D. Minn. 2015) (citations omitted).

Assuming that at the time this lawsuit was initiated, Paul Sorenson was an indispensable party, he no longer is an indispensable party and diversity jurisdiction now exists. Paul Sorenson and Melanie Forner entered into an "Assignment of a Claim for Damages" effective November 24, 2020, under which Paul Sorenson assigned his interest in the assets that are the subject of the present litigation to Melanie Forner. He assigned "any and all claims, demands, and cause or causes of action of any kind whatsoever which the undersigned currently has or may have against Joanne Marie Sorenson in her role as an Attorney of Fact for David August Sorenson," "as a spouse of a living David

13

August Sorenson," and "as an individual." (Assignment of a Claim for
Damages.) Based on the assignment, even if Paul Sorenson is not joined as a
party, the Court can afford complete relief among the parties in his absence.
Paul Sorenson no longer claims an interest such that his absence would impede
or impair his ability to protect said interest. And, given the assignment, Paul
Sorenson's interest would not leave Defendant facing a substantial risk of
inconsistent obligations.

The fact that the Assignment of a Claim for Damages became effective
after the commencement of this lawsuit does not change the Court's analysis.
Generally, "diversity of citizenship must exist at the time an action is filed in
order to be proper and events occurring after the filing of an action cannot create
or destroy diversity jurisdiction." Chevaldina v. Katz, 787 F. App'x 651, 653
(11th Cir. 2019) (citing, e.g., Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S.
567, 575-76 (2004)). However, "dismissal of the party that had destroyed
diversity" is a "method of curing a jurisdiction defect [that has] long been an
exception to the time-of-filing rule." Grupo Dataflux, 541 U.S. at 572. Thus, by
executing the Assignment of a Claim for Damages, Plaintiffs effectively

14

dismissed Paul Sorenson as an indispensable party and complete diversity exists

between the parties.

### 4.   Amount in Controversy

Plaintiffs have sufficiently alleged an amount in controversy which

exceeds the sum of $75,000.

"The district court has subject matter jurisdiction in a diversity case when

a fact finder could legally conclude, from the pleadings and proof adduced to the

court before trial, that the damages that the plaintiff suffered are greater than

$75,000." Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002). "[T]he amount in

controversy is measured by the value to the plaintiff of the right sought to be

enforced." Schubert v. Auto Owners Ins. Co., 649 F.3d 817, 821 (8th Cir. 2011)

(citation omitted).

Based on the pleadings, Plaintiffs seek at least $24,000 in damages related

to CD1 ($108,000 minus the $84,000 Plaintiffs admit Defendant has already paid

the siblings on CD1). At one point in the FAC, Plaintiffs allege that a bank

employee stated that CD2 was worth more than $108,000. Thus, the total amount

of damages claimed is more than $75,000.

### B.   Failure to State a Claim upon which Relief May Be Granted

### 1.    Rule 12(b)(6) Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  <u>Zutz v. Nelson</u>, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

<u>Id.</u> (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.  For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint."  <u>Greenman v. Jessen</u>, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).  Here, the parties have submitted many exhibits, some of which should not be considered on a motion to dismiss.  However, the Court may consider documents that are necessarily

embraced by the FAC, such as the Power of Attorney, upon which Plaintiffs'

claims are based.

### C.    Fraud

#### 1.    Fraud

The elements of a fraudulent misrepresentation claim are

> (1) there was a false representation by a party of a past or existing
> material fact susceptible of knowledge; (2) made with knowledge of
> the falsity of the representation or made as of the party's own
> knowledge without knowing whether it was true or false; (3) with
> the intention to induce another to act in reliance thereon; (4) that the
> representation caused the other party to act in reliance thereon; and
> (5) that the party suffer[ed] pecuniary damage as a result of the
> reliance.

Hoyt Properties, Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn.

2007) (citation omitted).

Plaintiffs admit that their claims "are not premised on a promise,

agreement, or contract between or among them, Joanne or David (i.e., the

Decedent)."  (Opp. at 34.)  The FAC alleges no actionable misrepresentation by

Defendant.  Because Plaintiffs admit that there were no false or other

representations made by Defendant, no fraudulent misrepresentation claim can

survive.

17

### 2. Constructive Fraud

Plaintiffs argue that, although the FAC alleges fraud, they are actually asserting a claim for constructive fraud.

### a) Elements of Constructive Fraud

"Constructive fraud is, by definition, not actual fraud but conduct that the law treats as fraud, irrespective of the actor's intent or motive." Perl v. St. Paul Fire & Marine Ins. Co., 345 N.W.2d 209, 213 (Minn. 1984). "Constructive fraud reposes exclusively in the context of fiduciary obligations and is simply a characterization of a breach of such a duty." Id. (citation omitted).

"To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove four elements: duty, breach, causation, and damages." Lund v. Lund, 924 N.W.2d 274, 284 (Minn. Ct. App. 2019).

### b) Duty

It is undisputed that Defendant owed Decedent a fiduciary duty as his attorney-in-fact under the power of attorney. "The relationship between an attorney-in-fact and a principal under a POA is a fiduciary one." State v. Campbell, 756 N.W.2d 263, 271 (Minn. Ct. App. 2008). See also Nelsen v. Nelsen, No. A20-1397, 2021 WL 1962923, at *2 (Minn. Ct. App. May 17, 2021) ("The

18

existence of a duty is undisputed—as attorneys-in-fact under decedent's power of attorney, respondents owed her a fiduciary duty.").  However, Plaintiffs provide no authority for the proposition that Defendant owed **<u>Plaintiffs</u>** a fiduciary duty.

Plaintiffs correctly note that an attorney in fact may not make a gift to herself unless the power to make that gift is expressly granted in the instrument and she acts in the best interest of the principal.  <u>See</u> Minn. Stat. § 523.24, subd. 8(2); <u>Hertzog v. Purcell</u>, No. C7-02-120, 2002 WL 31371949, at *3 (Minn. Ct. App. Oct. 22, 2002).

> Subdivision 8(2) is meant to prevent the attorney-in-fact from self-dealing, not to limit the amount that the principal may freely choose to give to the attorney-in-fact.  Therefore, subd. 8(2) does not apply unless the attorney-in-fact uses his self-gifting authority to transfer the principal's money or property to himself.

<u>Volk v. Wigen</u>, No. 18-CV-3485 (PJS/DTS), 2021 WL 168490, at *11 (D. Minn. Jan. 19, 2021).

Assuming without deciding that Plaintiffs have adequately pled Defendant was Decedent's agent and fiduciary as his attorney in fact and used her fiduciary status to engage in impermissible self-dealing by using her Power of Attorney to add herself as a joint accountholder to the certificates of deposit at

issue, Plaintiffs have failed to state a claim that they have standing to assert.  Any

breach of fiduciary duty was against Decedent and became a claim owned by

Decedent and, later, his estate.  Cf. Auburn Manor v. Irvin O Buschkowsky

Revocable Tr., No. A05-2056, 2006 WL 2806698, at *2 (Minn. Ct. App. Oct. 3, 2006)

(affirming finding that senior care facility could assert breach of fiduciary duty

claim against attorney-in-fact who self-gifted decedent's money so that decedent

could not pay past due bills to facility as third-party beneficiary of the power of

attorney when "the power of attorney agreement stated that its purpose, in part,

was 'to disburse funds to pay for my care, support and maintenance,'" so "the

language of this agreement evinced [the decedent's] that [senior care facility] be

paid for providing care to him").  Auburn Manor is an unpublished decision and

represents the minority view; however, even under Auburn Manor, Plaintiffs

have failed to show that Defendant owed them a fiduciary duty because the

power of attorney in this case did not in any way imply that Plaintiffs be paid

any money or that they were third-party beneficiaries of the power of attorney.

    In conclusion, even if Plaintiffs could show that Defendant breached a

fiduciary duty to Decedent, that would be a claim owned by Decedent, not

Plaintiffs.  The claim that she had impermissibly removed property from

Decedent's estate would be a claim that his estate, through his personal

representative, would have to assert or that Plaintiffs should have asserted in

objections to the probate court.  See, e.g., In re Estate of Boyd, No. A15-1132, 2016

WL 764441, at *1 (Minn. Ct. App. Feb. 29, 2016) (remanding issue of whether

attorney-in-fact breached fiduciary duty to decedent to probate court).  Plaintiffs'

fraud claim is dismissed for failure to state a claim.

### D.    Civil Theft

Plaintiffs assert that Defendant engaged in civil theft by using the Power of

Attorney to add her name as a joint accountholder on Decedent's non-probate

assets and withdrawing the funds for her or her heirs' personal use.

"A person who steals personal property from another is civilly liable to the

owner of the property for its value when stolen plus punitive damages of either

$50 or up to 100 percent of its value when stolen, whichever is greater."  Minn.

Stat. § 604.14, subd. 1.  "[C]ourts rely on the criminal theft statute to determine

whether a defendant's conduct amounted to theft."  Waters v. Cafesjian, 127 F.

Supp. 3d 994, 997 (D. Minn. 2015) (citations omitted).  "Minnesota's criminal-

theft statute defines theft as transferring, concealing, or retaining property

'intentionally and without claim of right . . . with intent to deprive the owner

permanently of possession.'"  Id. (quoting Minn. Stat. § 609.52, subd. 2(1)).

21

Plaintiffs claim that, here, Defendant took property that was intended to go to them once their father died.  They further argue that Defendant became Decedent's agent and fiduciary and breached her fiduciary duty by adding her name to the certificates of deposit.

Under Minnesota law, "[a] P.O.D. account belongs to the original purchasing or depositing party during the party's lifetime and not to the P.O.D. payee or payees; if two or more parties are named as original parties, during their lifetimes, rights as between them are governed by paragraph (a)."  Minn. Stat. § 524.6-203, subd. (b).  Therefore, at the time Defendant allegedly stole the certificates of deposit by adding her name as a joint account holder, she was stealing from Decedent, not from Plaintiffs who had no ownership interest in the certificates of deposit during Decedent's lifetime.  Decedent was free to change the beneficiaries on the certificates of deposit at any time while he was still alive.

### E.     Standing: Whether Plaintiffs Are the Real Parties in Interest

In order to have standing, "a plaintiff generally must assert his own legal rights and interests and cannot rest his or her claim to relief on the legal rights or interests of third parties."  E. Coast Test Prep LLC v. Allnurses.com, Inc., 167 F. Supp. 3d 1018, 1022 (D. Minn. 2016) (citation omitted).  Overall, the claims asserted by Plaintiffs are claims that belonged to Decedent.  They could have

22

been brought against Defendant by the personal representative of Decedent's estate or, if the personal representative refused to do so, Plaintiffs could have brought the claims themselves on behalf of Decedent. <u>See</u> Minn. Stat. § 524.3-720. Plaintiffs fail to state a claim that is based on their own legal rights or interests. In Plaintiffs' opposition brief, they indicate that they intend to request permission to amend the FAC to add causes of action of breach of fiduciary duty, unjust enrichment, conversion, and conversion of a negotiable instrument under Minn. Stat. § 336.3-420(a). However, all of these proposed claims suffer from the same defect as the claims currently asserted in the FAC – they are based on the legal rights of Decedent, not Plaintiffs.

Because the Court concludes that Plaintiffs have failed to state a claim upon which relief can be granted, the Court does not reach the parties' alternative arguments such as alleged procedural deficiencies in the FAC, res judicata, or the statute of limitations.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1.  Defendant Joanne Marie Sorenson's Motion to Dismiss Complaint and Amended Complaint [Docket No. 32] is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE**.

23

2.      Defendant's Motion to Dismiss [Docket No. 5] the original
        Complaint is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   February 3, 2022          s/Michael J. Davis
                                   Michael J. Davis
                                   United States District Court